**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DONNA BENTZEN, BLAIN & EILEEN HOUSER, CRAIG & KATIE WALTERS, RAINEY & DEBBIE WALTERS, APRIL HUCKE, RICHARD & CATHERINE TISCHER, DENISE ROELLICH, KIM WING, COLIN MCKEOWN, KENNETH SCOTT, ROBIN DYCK, HOLLY BRENNER, MARY LOU ARENTZ, ROBERT CLARK, CHARLES & KAREN GATES, TODD BLANCHARD, DONNA GILBERT, GLENN & IRENE WOOD, DANIEL & BETTY FAGAN, SHIRLEY ARENTZ, PAUL & SHIRLEY URBANEK, TRAVIS & GLENA SUITER, KATHLEEN ZABEL, TERRY & LINDA GREENE, THOMAS & PATRICIA DUNN, BARBARA GANDER, STEVE FLICK, PETER GRIFFITH, JEFF & COLLEEN BONSACK, EARL & ELAINE BONSACK, ROSALIE SCHNICK, THOMAS READY, JESSE & ASHLEY BONSACK, AND WILLIAM PFAFFLIN, | Case No. 21-cv-581 (Formerly Wisconsin Circuit Court La Crosse County No. 2021CV000393) |
| Plaintiffs, | |
| v. | **NOTICE OF REMOVAL** |
| | **JURY TRIAL DEMANDED** |
| THE 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co., AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA MANAGEMENT LLC, BASF CORPORATION, individually and as successor in interest to Ciba Inc., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, individually and as successor in interest to Sandoz Chemical Corporation, CORTEVA, INC., individually and as successor in interest to DuPont Chemical Solutions Enterprise, DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS INC., individually and as successor in interest to DuPont Chemical Solutions Enterprise, DYNAX CORPORATION, E. I. DUPONT DE NEMOURS | |

1

AND COMPANY, individually and as successor in
interest to DuPont Chemical Solutions Enterprise,
KIDDE-FENWAL, INC., individually and as
successor in interest to Kidde Fire Fighting, Inc.,
NATION FORD CHEMICAL COMPANY,
NATIONAL FOAM, INC., THE CHEMOURS
COMPANY, individually and as successor in interest
to DuPont Chemical Solutions Enterprise, THE
CHEMOURS COMPANY FC, LLC, individually and
as successor in interest to DuPont Chemical,
individually and as successor in interest to The Ansul
Company, TYCO FIRE PRODUCTS LP, and DOE
DEFENDANTS 1-20, fictitious names whose present
identities are unknown,

Defendants.

Defendants Tyco Fire Products LP and Chemguard, Inc. ("Tyco and Chemguard"), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1442(a)(1), 1446 and 1453, from the Circuit Court of the State of Wisconsin, La Crosse County to the United States District Court for the Western District of Wisconsin.  As grounds for removal, Tyco and Chemguard allege as follows on personal knowledge as to their own conduct and status and on information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1.     Plaintiffs seek to hold Tyco and Chemguard and certain other Defendants (collectively, the "Defendants") liable based on their alleged conduct in manufacturing, marketing and/or selling aqueous film-forming foams ("AFFF") that Plaintiffs allege was used by civilian and military airports, including at the La Crosse Regional Airport ("the Airport"), fire departments and industrial facilities for firefighting and training exercises, thereby resulting in environmental contamination.

2.      Specifically, Plaintiffs allege that Defendants' AFFF contained and/or degraded into per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that these substances caused contamination of the surface and groundwater as well as public drinking water wells in and around the City of La Crosse.

3.      At least some of the AFFF used by civilian and military airports, fire departments and industrial facilities in and around the City of La Crosse was manufactured by a select group of suppliers (including Tyco and Chemguard) in accordance with the military's rigorous specifications ("MilSpec AFFF").   Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco and Chemguard are entitled to remove this action in order to have their federal defense adjudicated in a federal forum.  *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

4.      In addition and in the alternative, removal of this action – a putative class action – is proper under relevant provisions of the Class Action Fairness Act ("CAFA"), which grants district courts original jurisdiction over class actions where, as here, there is minimal diversity of citizenship, the proposed plaintiff class contains at least 100 members in the aggregate, and the amount in controversy exceeds $5 million, exclusive of costs and interest.  28 U.S.C. § 1332(d)(2), (d)(5)(B).

## BACKGROUND

5.      This action was filed on August 3, 2021 in the Circuit Court of the State of Wisconsin, La Crosse County, bearing Case No. 2021CV000393 (Ex. A, Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 130(b), 1441(a), and 1442(a) because the Circuit Court of the State of Wisconsin, La Crosse County, is located within the Western District of Wisconsin.

6.      Tyco and Chemguard accepted service of the Complaint, attached hereto as Ex. A, on August 16, 2021.  Accordingly, this notice of removal is timely filed under § 1446(b)(1).  Tyco and Chemguard are not aware of and have not been served with any other process, pleadings, or orders in this action.

7.      Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).  Nor does removal of a class action under CAFA require consent of other defendants.  28 U.S.C. § 1453(b).

8.      Plaintiffs generally allege that certain of the Defendants (the "AFFF Defendants"), including Tyco and Chemguard, have manufactured, marketed, and/or sold AFFF products, which contain PFAS, including PFOS, PFOA, and/or their chemical precursors (Ex. A, Compl. ¶¶ 2–5). Plaintiffs allege that the AFFF manufactured, marketed, and/or sold by the AFFF Defendants, due to its use by civilian and military airports, including at the Airport, fire departments and industrial facilities for firefighting and training exercises, caused the contamination of the surface and groundwater as well as public drinking water wells in and around La Crosse.  (*Id.* ¶¶ 10–11).

Plaintiffs allege that they must incur substantial costs associated with monitoring, testing, treating, remediation, and other future expenses; and that they have experienced diminution of property value. (*Id.* ¶ 13–15).

9.      Plaintiffs assert claims for negligence (*id.* ¶¶ 214–226), trespass (*id.* ¶¶ 227–238), abnormally dangerous activity and absolute and strict liability (*id.* ¶¶ 239–248), private nuisance (*id.* ¶¶ 249–256), product liability – failure to warn (*id.* ¶¶ 257–272), actual fraudulent transfer (against Defendants DuPont and Chemours only) (*id.* ¶¶ 273–279), and punitive damages (*id.* ¶¶ 280–285).

10.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Circuit Court of the State of Wisconsin, La Crosse County.

11.      By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12.      Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL
## OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

13.      Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's directions have a causal nexus

with or are otherwise related to Plaintiffs' claims or injuries; and (d) it can assert a "colorable" federal defense. *Papp*, 842 F.3d at 812; *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

14.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

15.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and Chemguard and other manufacturers and holding that, notwithstanding Plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was

proper in a lawsuit against Tyco and Chemguard and other AFFF manufacturers).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that Plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

## A.    MilSpec AFFF

16.    Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property.  Because of its effectiveness, MilSpec AFFF has also been used in other settings, including civilian airports, where fuel fires are an acute risk.  Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

---

[1] Following removal, Tyco and Chemguard intend to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005):

17.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.  The applicable specification, Mil-F-24385 ("the MilSpec"), was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  In 2019 the MilSpec removed the modifier

---

Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

"fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

19.     So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. *See* 14 C.F.R. § 139.1 (2019).  The federal government requires Part 139 airports to use MilSpec AFFF.  On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[7]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[8]  The FAA explained:

> There are several reasons for this requirement.  First of all, AFFF has to be compatible when mixed.  AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible.  AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer.  Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire.  Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[9]

---

[7] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

[8] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[9] *Id.*

20.    On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[10]  Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

21.    The Airport is a federally-regulated Part 139 airport[11] that is required to stock and use MilSpec AFFF.  MilSpec AFFF has been used and released into the environment at the Airport since at least 2006.

**B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

*1.    The "Person" Requirement Is Satisfied*

22.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco and Chemguard (a limited partnership and corporation, respectively) are "persons" under the statute.   For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett*, 607 F.3d at 1085; *Isaacson*, 517 F.3d at 135–36.

*2.    The "Acting Under" Requirement Is Satisfied*

23.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  "The words 'acting under' are to be interpreted broadly . . . ."  *Isaacson*, 517 F.3d at 136 (citation omitted).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting

---

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

[11] *See* FAA Part 139 Airport Certification Status List (last updated Aug. 3, 2021), available at https://www.faa.gov/airports/airport_safety/part139_cert/.

under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

24.     The requirement of "acting under" federal office is met here because Plaintiffs' claims, at least in part, challenge Tyco and Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[12]  Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF.  *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and Chemguard and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same).  If Tyco and Chemguard and other manufacturers did not provide MilSpec AFFF for use at military bases and Part 139 airports, the government would have to manufacture and supply the product itself.

---

[12] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

25.     In designing, manufacturing and supplying the MilSpec AFFF at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers.  Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[13]

### 3.     *The Causation/Relation Requirement Is Satisfied*

26.     The third requirement, that the defendant's actions taken "under color of federal office" have a causal nexus with or otherwise related to plaintiff's claims or injuries, erects a hurdle that "is quite low."  *Isaacson*, 517 F.3d at 137.[14]  To satisfy this requirement, a defendant need only establish that an act that allegedly caused or contributed to the Plaintiffs' injury occurred while the defendant was performing its official duties.  *Id.* at 137–38.

27.     Here, the Plaintiffs' claims arise at least in part from Tyco and Chemguard's production and sale of AFFF manufactured to military specifications for use at Part 139 airports. Plaintiffs allege that the use of PFAS in AFFF is the source of its injuries.  (*See*, *e.g.*, Ex. A, Compl. ¶¶ 10–14).  Tyco and Chemguard contend that the use of such chemicals in MilSpec AFFF was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed by Tyco, Chemguard, and other manufacturers to meet specifications established by the DoD. Military installations and Part 139 airports are required to employ MilSpec AFFF.  The design

---

[13] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[14] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

choices Plaintiffs are attempting to impose via state tort law would create a conflict in which Tyco and Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards.  The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Tyco and Chemguard's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

28.    Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF.  The connection between Plaintiffs' alleged injuries and Tyco and Chemguard's actions under color of federal office is clear.  It is irrelevant that the Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiff cannot decide what defense Defendants might present").

### 4.    *The "Colorable Federal Defense" Requirement Is Satisfied*

29.    The fourth requirement ("colorable federal defense") is satisfied by Tyco and Chemguard's assertion of the government contractor defense.

30.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.*

(quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[15]   Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a Plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

31.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

32.     Tyco and Chemguard have satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Tyco and Chemguard's products appeared on the DoD Qualified Products List, which

---

[15] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco and Chemguard); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

33.     Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[16] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects

---

[16] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

environmentally."[17]   By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."   In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.   More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[18]   Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[19]   *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense

---

[17] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[18] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[19]   *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

34.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at \*5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at \*13.

35.     Tyco and Chemguard's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco and/or Chemguard for alleged injuries to Plaintiffs that were caused in whole or in part by Tyco and Chemguard's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military.  The government contractor defense precludes such an attack.  *See Boyle*, 487 U.S. at 509.

## ALTERNATIVELY, FEDERAL JURISDICTION EXISTS UNDER CAFA

36.     CAFA grants district courts original jurisdiction over class actions where there is minimal diversity, the proposed plaintiff classes contain at least 100 members in the aggregate, and the amount in controversy exceeds $5 million, exclusive of costs and interest.  28 U.S.C. § 1332(d)(2), (d)(5)(B); *see Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

A.     **Minimal Diversity Exists**

37.     Minimal diversity exists for purposes of CAFA where "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

38.     Plaintiffs allege that they are "residents of La Crosse, Wisconsin".  (Ex. A, Compl. ¶ 1).  They further assert that the presence of PFAS in their water supply must be remedied now or in the future "to safeguard their property."  (*Id.* ¶ 246).  These allegations demonstrate that Plaintiffs are domiciled in Wisconsin (*i.e.*, live there and intend to remain there) and are therefore citizens of Wisconsin for purposes of diversity jurisdiction.  *See Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002) ("Citizenship for purposes of the diversity jurisdiction is domicile, and domicile is the place one intends to remain . . . .").

39.     The Complaint alleges that numerous Defendants are corporations that are formed under the law of a State other than Wisconsin and have their principal place of business in a State other than Wisconsin.  (*See, e.g.*, *id.* ¶¶ 58, 60, 71, 73, 84, 87).  Accordingly, minimal diversity exists in this case.

B.     **The Proposed Class Contains At Least 100 Members**

40.     Plaintiffs allege that members of the putative class will number in the "tens of thousands."  (*Id.* ¶ 205).

41.     Therefore, the proposed class contains at least 100 members.

C.      **The Amount in Controversy Exceeds $5 Million**

42.     For purposes of a notice of removal, the defendant need only make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).  "[T]he claims of the individual class

members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).

43.     Plaintiffs seek recovery of costs and expenses related to past, present and future investigation, sampling, and assessment of the extent of PFAS contamination; past, present, future treatment and remediation of PFAS contamination; and the diminution of property value caused by PFAS contamination in Plaintiffs' private wells and surrounding groundwater.  (*Id.* at Prayer for Relief).

44.     Plaintiffs also seek an award of general, compensatory, exemplary, consequential, nominal, and punitive damages, and attorney fees and costs, including prejudgment and post-judgement interest.  (*Id.* Prayer for Relief).

45.     Plaintiffs seek an award of damages on behalf of themselves and the "tens of thousands" of members of the proposed class.  (*Id*. ¶ 205).

46.     It is readily apparent from the face of the Complaint that an award of damages for tens of thousands of class members for all damages that Plaintiffs seek, would exceed $5 million.  Even taking Plaintiffs' smallest estimate of the size of the class – 10,000 members – the $5 million threshold for the class is satisfied if the average amount in controversy on each Plaintiff's claim is just $500.  Given the nature of the claims, it is obvious that each class member seeks more than that amount.  Accordingly, the amount in controversy exceeds $5 million.  At any rate, nothing in the Complaint forecloses the possibility that the aggregate amount in controversy exceeds $5 million.  *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829 (7th Cir. 2011) (explaining that the amount in controversy requirement is satisfied unless it is "legally impossible" for plaintiff to recover it).

WHEREFORE, Tyco and Chemguard hereby remove this action from the Circuit Court of the State of Wisconsin, La Crosse County, to this Court.

RESPECTFULLY SUBMITTED this 15th day of September, 2021.

By: _Electronically Signed by Atty. Thomas P. Hansfield_
Peter A. Tomasi WI Bar No. 1038412
Thomas P. Hansfield WI Bar No. 1122482
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Phone:  (414) 271-2400
Facsimile:  (414) 297-4900
ptomasi@foley.com
thansfield@foley.com

*Attorneys for Defendants Chemguard, Inc. and Tyco Fire Products LP*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, I electronically transmitted the foregoing Notice of Removal to the Clerk's Office using the CM/ECF System for filing and delivered a copy of the foregoing via United States Mail to the following:

James R. Koby
KOBY LAW, LLC
201 Main Street, Suite 620
La Crosse, WI 54601
(608) 782-1800
jkoby@kobylawllc.com

Scott J. Curtis
CURTIS LAW FIRM, LLC
201 Main Street, Suite 1000
La Crosse, WI 54601
(608) 784-1605
scott@lacrosselaw.com

Sean O'Flaherty
O'FLAHERTY LAW, LLC
201 Main Street, Tenth Floor
La Crosse, WI 54601
(608) 785-3255
soflaherty@lacrosselaw.com

*Counsel for Plaintiffs*

Daniel L. Ring
Tyler D. Alfermann
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
dring@mayerbrown.com
talfermann@mayerbrown.com

*Counsel for Defendant 3M Company*

Peter Condron
Clifford J. Zatz

Laura Offenbacher Aradi
CROWELL & MORING
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com

*Counsel for Defendant AGC Chemicals Americas Inc.*


Jennifer Simon
Alan Truitt
KAZMAREK MOWREY CLOUD LASETER LLP
1230 Peachtree Street N.E., Suite 900
Atlanta, Georgia 30309
404-812-0126
jsimon@kmcllaw.com
atruitt@kmcllaw.com

*Counsel for Defendant Amerex Corporation*


Heidi Levine
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000
hlevine@sidley.com

*Counsel for Defendant Arkema Inc.*


Melanie Black Dubis
Charles Raynal
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 400
Raleigh, NC 27601
Tel: (919) 835-4511
Fax: (919) 834-4564
charlesraynal@parkerpoe.com
melaniedubis@parkerpoe.com

*Counsel for Defendants Archroma Management LLC, and Clariant Corporation*

Matt Holian
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel: (617) 406-6009
matt.holian@us.dlapiper.com

John Wellschlager
DLA PIPER LLP (US)
The Marbury Building
6224 Smith Avenue
Baltimore, MD 21209-3600
Tel: (410) 580-4281
john.wellschlager@dlapiper.com

*Counsel for Defendant BASF Corporation*


Michael L. Carpenter
GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.
Post Office Box 2636
Gastonia, North Carolina 28053-2636
Telephone: 704-865-4400
Facsimile: 704-866-8010
mcarpenter@gastonlegal.com

*Counsel for Defendant Buckeye Fire Equipment Company*


Jonathan I. Handler
Keith H. Bensten
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Tel: (617) 345-4600
kbensten@daypitney.com
jihandler@daypitney.com

*Counsel for Defendants Kidde-Fenwal, Inc. and Carrier Global Corporation*


Jonathan Blakley
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800

Chicago, IL 60606
Tel: (312) 619-4915
jblakley@grsm.com

*Counsel for Defendant ChemDesign Products Inc.*


John Parker
Oliver Twaddell
GOLDBERG SEGALLA LLP
711 Third Ave. Suite 1900
New York, NY 10017
Tel: (646) 292-8700
Fax: (646) 292-8701
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com

*Counsel for Defendant Chemicals Inc.*


Kat Hacker
BARTLIT BECK LLP
1801 Wewatta, Suite 1200
Denver, Colorado 80202
Tel: (303) 592-3141
dupont@bartlitbeck.com

*Counsel for Defendants Corteva Inc. and DuPont de Nemours Inc.*


Kurt D. Weaver
WOMBLE BOND DICKSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Tel: (919) 755-6770
Fax: (919) 755-6770
kurt.weaver@wbd-us.com

*Counsel for Defendant Deepwater Chemicals Inc.*


Kirk G. Warner
Clifton L. Brinson
Addie K.S. Ries
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611

Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com

*Counsel for Defendant Dynax Corporation*


David R. Erickson
Brent Dwerlkotte
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO
(816) 474-6550
derickson@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants E. I. duPont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC*


Ethan R. Ware
WILLIAMS MULLEN
1441 Main Street, Suite 1250
P.O. Box 8116 (29202)
Columbia, SC 29201
Tel: 803.567.4610
Fax: 803.567.4601
eware@williamsmullen.com

*Counsel for Defendant Nation Ford Chemical Company*


Keith E. Smith
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Tel: (215) 988-7800
smithkei@gtlaw.com

*Counsel for Defendant National Foam Inc.*